UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANIEL LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV00840 AGF |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Daniel Lee was not disabled and, thus, not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, or Supplemental Security Income under Title XVI of the Act, *id.* §§ 1381-1383f. For the reasons set forth below, the decision of the Commissioner shall be reversed and remanded.

Plaintiff, who was born on July 18, 1963, filed his applications for benefits on April 17, 2006, at the age of 43, alleging a disability onset date of September 30, 2003, due to hip and spine problems and arm pain. After Plaintiff's application was denied at the initial administrative level, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Such a hearing was held on July 22, 2008, at which Plaintiff and a Vocational Expert ("VE") testified. By decision dated August 15, 2008, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work

with some limitations, and based upon the testimony of the VE that there were jobs that an individual such as Plaintiff could perform, the ALJ found that Plaintiff was not disabled.  Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on March 13, 2011.  Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record as a whole.  Specifically, Plaintiff argues that the ALJ improperly found that Plaintiff could perform the sitting and standing requirements of sedentary work, and erred in not including Plaintiff's intellectual deficits in the RFC assessment.  Plaintiff also argues that the ALJ improperly discredited Plaintiff's subjective complaints.

## BACKGROUND

**Work History and Application Forms**

Plaintiff represented on his application form that he worked full time from 1993 to 2003 at various laborer jobs, with his longest employment being from 1983 to 1994 as a fork lift operator at a factory.  He wrote that he stopped working on February 1, 2003, because he was "working for a temp agency [as a general laborer] and the work ran out." (Tr. 118-19.)   Earnings records show annual earnings of approximately $7,000 to $13,000 from 1984 through 2000, with minimal earnings in 2001 through 2003.  (Tr. 107.)

2

**Medical Record**

Plaintiff was hospitalized on September 24, 2003, after being hit as a pedestrian by a motor vehicle.  X-rays showed a mildly displaced coccyx fracture, a minimally displaced right acetabular fracture with disruption of the iliopubic line, mild cervical and thoracic spine degenerative disc disease ("DDD"), but no right hip fracture, dislocation, or subluxation.  Plaintiff's pain control improved and he was discharged on September 27, 2003, with directions for continued physical therapy and prescriptions for pain medications, including Vicodin.  (Tr. 160-71.)  Records from a health clinic indicate repeated prescriptions for the pain medication Tramadol and muscle relaxer, Methacarbomol.  (Tr. 272-92.)  An ongoing prescription of Tramadol is documented at least through April 3, 2008, on which date Naproxen, also a pain medication, was also prescribed.  (Tr. 384.)

On December 17, 2003, Dory Boyer, M.D., noted that Plaintiff had good range of motion in his hip and he was neurovascularly intact in his right lower extremity, but he had some hip reflexor weakness.  He walked with a cane, but he could bear weight on his right side.  March 17, 2004 lumbar spine x-rays showed normal lumbar lordosis and no fracture or dislocation.  Pelvic x-rays reflected a nearly healed right acetabular fracture.  Lumbar spine MRI results from April 2004 showed mild DDD at L4-L5.  A July 2004 cervical spine MRI revealed DDD, a disc herniation at C5-C6, and disc bulging at T6-T7 and T7-T8.  (Tr. 185-95.)

Plaintiff was incarcerated from April 2005 to July 2006.  During this time, x-rays

showed moderate degenerative changes in Plaintiff's lumbar spine, and mild degenerative changes in his hips. A "Medical Lay-In Form" dated May 31, 2005, stated that Plaintiff used a cane, required a lower bunk and lower floor and was unable to participate in work activities, with a "Discontinue Date" of "00/00/0000." (Tr. 406.) A June 29, 2006 evaluation showed strong grip and strong lower extremity movement, bilaterally. (Tr. 195-265.)

State consulting physician Jack Tippett, M.D., examined Plaintiff on September 5, 2006, in connection with Plaintiff's application for disability benefits, and again on November 29, 2006, for vocational rehabilitation eligibility. On September 5, 2006, straight leg raising was negative and lumbar spine range of motion was normal. Right hip x-rays showed slight mushrooming of the right femoral head, which appeared to be longstanding, and a healed acetabular fracture. Plaintiff could maneuver the examination table unassisted. Dr. Tippett noted that Plaintiff walked with a minimal limp on the right, but noted no sensory, motor or reflex abnormalities, and no muscle atrophy, muscle spasm, or muscle tenderness. (Tr. 389-94.)

In his November 29, 2006 report, Dr. Tippett stated that the Plaintiff had difficulty carrying out even simple instructions. He noted Plaintiff's "peculiar" gait, uneven posture, and inability to perform forward bending. He restricted the Plaintiff's lifting to five to 20 pounds and stated that Plaintiff would have difficulty standing or walking for more than 30 minutes at a time, and would be able to "sit for longer periods, but might have to change positions regularly." (Tr. 396-99.)

4

Lumbar spine x-rays from December 12, 2006, showed DDD, and hip x-rays indicated osteoarthritis. William Feldner, D.O., noted that Plaintiff's spinal range of motion was decreased, movements were painful, and he walked slowly, cautiously, and with the use of an assistive device. (Tr. 291-92, 273-74.)

A one-month Vocational Evaluation/Assessment, completed on February 27, 2007, recommended that "employment was not realistic for [Plaintiff] at this time." Vocational barriers were noted as including, but not limited to, significant physical issues resulting from the automobile accident, and "limited academic skills and abilities" that precluded "employment beyond the entry stage of employment." It was recommended that he seek to obtain only part-time work as an assembly worker. Plaintiff's positive attitude during the course of the evaluation was noted. The assessment stated that Plaintiff learned most effectively when directions were "physically modeled for him," and that he tested in the borderline range of intellectual functioning. (Tr. 322-26.)

Notes from a routine follow-up examination on March 12, 2007, state that Plaintiff had not seen his orthopedic surgeon for six months, "secondary to loss of medical insurance, medicaid." The examining physician also noted a normal gait, low back pain with some radicular symptoms, and that Plaintiff was smoking a pack of cigarettes a day. (Tr. 362-64.)

On March 29, 2007, Plaintiff presented to the clinic with complaints of hip pain. His posture was noted as "Leaning forward and Scoliatic"; his gait was noted as "Limping and Use of assistive device." Neurological evaluation revealed no impairment

5

of recent or remote memory, normal attention span and ability to concentrate, and an appropriate fund of knowledge. Musculoskeletal exam showed decreased range of motion, painful movements, and restricted extension. (Tr. 360-61.) Lumbosacral spine x-rays taken in May 2007, showed degenerative changes at L2 and L3 and hip x-rays revealed minimal degenerative joint disease. (Tr. 295-96.) Examinations in April and June 2007 revealed normal gait and posture. (Tr. 366, 380.) During follow-up on November 8, 2007, Plaintiff stated that he felt well and had only minor complaints. (Tr. 350.)

**Evidentiary Hearing of July 22, 2008 (Tr. 8-48)**[1]

Plaintiff, who was represented by counsel, testified that he was 45 years old and had completed the 12th grade in regular classes, but had difficulty understanding written words. Plaintiff reviewed his work history, stating that he stopped working in 2003, after he was hit by the car. He testified about being incarcerated from 2004 to July 2006, and going to vocational rehabilitation after he was released. Plaintiff stated that he felt numbness in his hands and fingers, and pain in his left shoulder, but that his worst problem was his lower back. The resulting difficulty lifting and especially walking meant that he could not do any work that he knew how to do. He testified that he needed

---

[1] The Court notes that pages 12 through 18 of the transcript of the hearing are missing from the administrative record. Neither party raises this matter and the Court does not believe that this lacuna affects the Court's ability to conduct proper judicial review of the ALJ's decision.

assistance with job applications and that through vocational rehabilitation he tested at the 4th grade level for reading and math and was told that he learned better by demonstration.

Plaintiff testified that he currently experienced numbness in his hands, fingers, and left shoulder, and back pain radiating up the left side of his neck. He could sit for ten to 15 minutes before his back and lower hip would begin to throb and his leg would lock up. When sitting in a hard chair he had to change positions every ten to 15 minutes. He used a cane when walking in public. He could stand for 10 minutes without his leg giving out. Plaintiff stated that he could not bend over -- if he dropped something he would attempt to pick it up with his cane. He barely left the house, except for vocational rehabilitation once a week. Even with pain medication, Plaintiff's pain was still an 8/10.

The VE testified that Plaintiff did not possess any transferable skills from any of his past jobs. The ALJ asked the VE to consider an individual of the same age, education, and vocational background as Plaintiff who was limited to sedentary work that allowed for changing positions frequently; was limited to occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching, and crawling; was unable to climb ropes, ladders, and scaffolds, or push and pulling with the left leg; was limited to no more than occasional overhead reaching; and had to avoid even moderate exposure to vibration, unprotected heights, and other industrial hazards. The VE testified that such an individual could not perform any of Plaintiff's past work, but could perform the jobs of surveillance systems monitor, food and beverage order clerk, and addresser. The VE testified that all jobs would be precluded if the individual had disruptions during the work

day due to the impairments and medication testified to by the Plaintiff. In addition, Plaintiff's chronic pain and medication side effects would preclude work so far as affecting the Plaintiff's concentration and memory. The VE noted that the job of addresser would require certain productivity levels that a person with academic challenges and processing issues may not be able to handle.

**ALJ's Decision of August 19, 2008** (Tr. 59-69)

The ALJ found that Plaintiff had the severe impairments of DDD of the cervical and lumbar spines, degenerative joint disease, and status post pelvic fracture, but that these impairments, singly or in combination, did not meet the requirements for any deemed-disabling impairment listed in the Commissioner's regulations. The ALJ then found that Plaintiff had the RFC to perform sedentary work[2] that allowed frequent rotation of position. Plaintiff was precluded from pushing or pulling with his right leg, climbing ropes, ladders, or scaffolds, and had to avoid even moderate exposure to vibration, industrial hazards, and unprotected heights; but he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and reach overhead.

---

[2] Sedentary work involves lifting no more than 10 pounds at a time, occasionally lifting or carrying articles like docket files, ledgers, and small tools, and occasionally walking and standing. 20 C.F.R. § 404.1567(a).

"Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. Sitting would generally total about six hours of an eight-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as seeing, manipulation, and understanding, remembering, and carrying out simple instructions. Social Security Ruling ("SSR") 96-9p, 1996 WL 374185, at *6-7 (July 2, 1996).

In support of this RFC assessment, the ALJ stated that Plaintiff's allegation of the necessity for a cane were "offset by other, more recent records," namely the March 17, 2007 report that his lower extremities were within normal limits bilaterally, the observation dated August 6, 2007, that his gait was normal, and the April 23, 2008 report of no tenderness or edema in his lower extremities bilaterally and full range of motion in all joints and normal joints and muscles.  The ALJ concluded that the medical record did not "fully" support Plaintiff's alleged limitations due to his spinal impairments, noting his limitations "surpass[ed] those generally associated with his diagnosis," and did not require aggressive treatment, such as epidural injections, surgery, "or even physical therapy."

The ALJ noted that while the record indicated that Plaintiff did not receive treatment from an orthopedist for many months because he lacked medical insurance, there was no evidence that Plaintiff was ever refused treatment for financial reasons, that he sought help from public or private entities to help defray the cost of treatment, or that he discussed alternative methods of payment with his physicians.  Thus the ALJ found "unconvincing" Plaintiff's assertions of a lack of financial resources as a reason for failing to seek treatment.

The ALJ noted Plaintiff's sporadic work history, and that Plaintiff stopped working on February 1, 2003, for reasons "not fully related to" his alleged impairments, which, according to the ALJ, raised "a question as to whether the claimant's continuing unemployment is actually due to medical impairments."  The ALJ further found that

9

Plaintiff stood to gain more from being disabled than he previously earned as an employee, which indicated a benefit-seeking motivation and reflected poorly on Plaintiff's credibility.

Turning to Plaintiff's allegations of a poor capacity to read and comprehend, the ALJ found that Plaintiff was able to communicate in English, and noted that Plaintiff did not attend special education classes while in school, and that his employment records did not indicate that he was reprimanded or limited due to his limited capacities.  Therefore, the ALJ found that Plaintiff's "reading and comprehension limitations did not result in any functional limitations."  Relying on the VE's testimony, the ALJ concluded that Plaintiff could perform the work of  a surveillance system monitor, food and beverage order clerk, and addresser, and was thus not disabled within the meaning of the Social Security Act..

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court "must review the entire administrative record to 'determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.'" *Johnson v. Astrue*,  628 F.3d 991, 992 (8th Cir. 2011) (quoting *Dolph v. Barnhart*, 308 F.3d 876, 877 (8th Cir. 2002)).  The court "'may not reverse . . . merely because substantial evidence would support a contrary outcome.  Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citations omitted); *see also Hacker v. Barnhart*, 459 F.3d

934, 936 (8th Cir. 2006) (explaining that the concept of substantial evidence allows for the possibility of drawing two inconsistent conclusions, and therefore, embodies a "zone of choice," within which the Commissioner may decide to grant or deny benefits without being subject to reversal by the reviewing court).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied. If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If so, the claimant is not disabled. If he cannot perform his past relevant work, the burden of proof

shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors -- age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010).

**ALJ's RFC Assessment**

Plaintiff argues that the ALJ improperly found that Plaintiff had the RFC to perform the sitting and standing requirements of sedentary work. Plaintiff posits that because the ALJ's physical RFC assessment did not fully incorporate the physical restrictions noted in Dr. Tippett's reports of September 5 and October 29, 2006, it was thus not supported by any medical evidence, as Dr. Tippett is the only medical source relied upon by the ALJ. Plaintiff further argues that the ALJ erred in not including in the RFC the mental limitations contained in the February 27, 2007 vocational rehabilitation assessment.

A disability claimant's RFC is the most he or she can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). In *McCoy v. Schweiker*, 683 F.2d 1138 (8th Cir. 1982) (en banc), the Eighth Circuit defined RFC as the ability to do the requisite work-related acts "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Id.* at 1147. The ALJ's determination of an individual's RFC should be "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir.

2002) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Although a claimant's RFC is determined at step four of the sequential evaluation process, where the burden of proof rests on the claimant, the ALJ bears the primary responsibility for making the RFC determination and for ensuring that there is "some medical evidence" regarding the claimant's "ability to function in the workplace" that supports the RFC determination. *Lauer v. Apfel*, 245 F.3d 700, 703-04 (8th Cir. 2001).  This Court is required to affirm the ALJ's RFC determination if that determination is supported by substantial evidence on the record as a whole.  *McKinney,* 228 F.3d at 863.

     As noted above, Dr. Tippett, the only medical source relied upon by the ALJ, opined that Plaintiff would have difficulty standing or walking for more than 30 minutes at a time, and would be able to "sit for longer periods, but might have to change positions regularly."  In light of the Commissioner's definition of sedentary work, the ALJ found that Plaintiff had the RFC to walk for about two hours and sit for a total of about six hours in an eight-hour workday, while being allowed frequent rotation of position.  The Court concludes that the ALJ's physical RFC tracks Dr. Tippett's opinion closely enough for that opinion to provide substantial support for the ALJ's physical RFC.  *See Moore v. Astrue*, 572 F.3d 520, 523-24 (8th Cir. 2009) (concluding that a consulting physician's RFC assessment formed an adequate medical basis to support the ALJ's RFC findings); *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (concluding that one consulting physician's RFC assessment supported the ALJ's RFC finding when none of the claimant's treating physicians opined she was unable to work).

This leaves the question of the ALJ's failure to factor into the RFC assessment Plaintiff's intellectual limitations. "When a claimant suffers from exertional and nonexertional impairments, and the exertional impairments alone do not warrant a finding of disability, the ALJ must consider the extent to which the nonexertional impairments further diminish the claimant's work capacity." *Lucy v. Chater,* 113 F.3d 905, 908 (8th Cir. 1997).

As Plaintiff points out, SSR 96-9p states: "An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." 1996 WL 374185, at *1. The fact that Plaintiff was never remanded at or fired from previous jobs, which were for the most part, laborer jobs, does not mean that his intellectual limitations would not impact his ability to perform sedentary jobs. The Eighth Circuit has recognized that borderline intellectual functioning, if supported by the record as it is here by the February 27, 2007 vocational rehabilitation assessment, is a significant nonexertional impairment that must be considered by a VE. *See Lucy*, 113 F.3d at 908. The Court concludes that the ALJ committed reversible error by not including Plaintiff's intellectual limitations in his RFC, and hence, in the hypothetical question posed to the VE. *Swope v. Barnhart*, 436 F.3d 1023, 1025 (8th Cir. 2006) (holding that disability claimant is entitled to have a VE consider borderline intellectual functioning along with his other impairments to determine how it impacts upon his RFC, even though borderline intellectual functioning may not rise to the level of a disability by itself); *Lucy*, 113 F.3d at 908 (same).

## **CONCLUSION**

This matter must be remanded to the ALJ to re-call a VE and to include in any hypothetical posed to the VE an explanation of Plaintiff's intellectual limitations, and thereafter to determine whether, in light of the full record, there are jobs available in significant numbers in the national economy which Plaintiff can perform. The ALJ should also consider supplementing the record with a new evaluation of Plaintiff's intellectual functioning.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 15th day of September, 2011